JOHN W. HUBER, United States Attorney (#7226)
JACOB J. STRAIN, Assistant United States Attorney (#12680)
111 South Main Street, Ste. 1800 • Salt Lake City, Utah 84111
Telephone: (801) 524-5682 • Facsimile: (801) 325-3387

KALINA M. TULLEY, Asst. Chief, Antitrust Division, U.S. Dept. of Justice (IL 6210304)
ROBERT M. JACOBS, Trial Attorney, Antitrust Division, U.S. Dept. of Justice (IL 6289819)
RUBEN MARTINEZ, JR., Trial Attorney, Antitrust Division, U.S. Dept. of Justice (TX 24052278)
MOLLY A. KELLEY, Trial Attorney, Antitrust Division, U.S. Dept. of Justice (IL 6303678)

*Attorneys for the United States of America*

---

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>KEMP & ASSOCIATES, INC. AND DANIEL J. MANNIX,<br><br>Defendants. | Case No. 2:16-cr-00403-DS<br><br>**GOVERNMENT'S MOTION TO RECONSIDER ORAL RULING, OBJECTION TO DEFENDANTS' PROPOSED ORDER AND REQUEST FOR A RULING ON DEFENDANTS' MOTION TO DISMISS**<br><br>U.S. District Court Judge David Sam<br>Magistrate Judge Brooke C. Wells |

## I.    Introduction

The Indictment charged a naked agreement among horizontal competitors to allocate customers.   It is well-established that an agreement of that type is *per se* unlawful.   Holding that the rule of reason applies to the charged customer-allocation agreement is clear error.   In a criminal case, a motion to reconsider is proper when there is a need to correct clear error. *United States v. Christy*, 739 F.3d 534, 539 (10th Cir. 2014).

The government respectfully submits that neither the reasons the Court provided orally at

the hearing nor the reasons articulated in the order proposed by the Defendants ("Proposed Order") provide a valid basis for that holding.   Accordingly, the government requests that the Court reconsider its holding that the *per se* rule does not apply to the conspiracy as charged.

## II.   The *Per Se* Rule Applies to this Case

The Supreme Court has long held that agreements of a type that is manifestly anticompetitive and "would always or almost always tend to restrict competition" are condemned as *per se* unlawful under the Sherman Act.   *Bus. Elecs. Corp. v. Sharp Elecs. Corp.*, 485 U.S. 717, 723 (1988); *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 218 (1940) (affirming criminal convictions under *per se* rule; "for over forty years this Court has consistently and without deviation adhered to the principle that price-fixing agreements are unlawful *per se* under the Sherman Act and that no showing of so-called competitive abuses or evils which those agreements were designed to eliminate or alleviate may be interposed as a defense.").

For decades, the United States has reserved criminal prosecution under the antitrust laws for "horizontal, per se unlawful agreements such as price fixing, bid rigging, and customer and territorial allocations."[1]   By exercising its prosecutorial discretion in this way to focus on the most serious and plain antitrust offenses, "as opposed to the 'rule of reason' or monopolization analyses," the government provides "clear, predictable boundaries for business" between what conduct is potentially subject to the severe sanctions that accompany criminal conviction and what conduct is subject only to civil equitable relief.[2]   By mistakenly concluding that a naked

---

[1]  Antitrust Division Manual, at Page III-12 (5th Ed.), available at https://www.justice.gov/atr/file/761141.

[2] Thomas O. Barnett, Assistant Attorney General, Antitrust Division, U.S. Department of Justice. *Criminal Enforcement of Antitrust Laws: The U.S. Model* (2006), available at https://www.justice.gov/atr/speech/criminal-enforcement-antitrust-laws-us-model.

market allocation agreement is subject to the rule of reason, the Court's holding threatens to create confusion about when the government may choose to seek criminal punishment rather than a non-punitive civil injunction.

Agreements to allocate customers or markets have long been held to be *per se* illegal because they are manifestly anticompetitive.   Such agreements necessarily eliminate competition between competitors for the affected customers.   *See Blue Cross & Blue Shield United of Wisc. v. Marshfield Clinic*, 65 F.3d 1406, 1415 (7th Cir. 1995) ("It would be a strange interpretation of antitrust law that forbade competitors to agree on what price to charge, thus eliminating price competition among them, but allowed them to divide markets, thus eliminating all competition among them.").   For this reason, the Supreme Court and the Tenth Circuit have held that schemes to allocate markets or customers are illegal *per se*.   *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 886 (2007) (citing *Palmer v. BRG of Ga., Inc.*, 498 U.S. 46, 49-50 (1990)); *United States v. Suntar Roofing, Inc*., 897 F.2d 469, 473 (10th Cir. 1990).

The Indictment here charges a standalone agreement to allocate customers by eliminating competition over contingency fees whenever such competition would exist.   Indictment ¶¶ 9, 11(b), 11(c).   On June 21, 2017, this Court heard oral argument and held from the bench that the case is subject to the rule of reason because the charged customer allocation agreement did not "affect a very large part of our society, it's just very narrowly focused" and it was "unique and unusual." Tr. at 50.   The Defendants submitted a Proposed Order, in which the Court would hold that the charged customer allocation agreement is subject to the rule of reason because it (1) is unlike other allocation agreements in that it applies to new customers, (2) occurred in a "relatively obscure industry," (3) impacted a "small number of estates," and (4) could give rise to some efficiencies.   Proposed Order ¶¶ 3-4.   The Proposed Order also relies on the ancillary

restraints doctrine to hold that the customer allocation agreement is properly assessed under the rule of reason.   Proposed Order ¶ 4 (citing *Polk Bros., Inc. v. Forest City Enters.*, *Inc.,* 776 F.2d 185, 187-90 (7th Cir. 1985)).   The Court's oral holding is clearly erroneous and should be reconsidered.   The Proposed Order invites the Court to err repeatedly and should not be entered.

    A.   The *Per Se* Rule Applies to All Naked Agreements to Allocate Customers

"Consistent with the analysis of the Supreme Court and previous holdings of this court and of other circuits," Tenth Circuit precedent holds that any standalone "agreement to allocate or divide customers between competitors within the same horizontal market, constitutes a *per se* violation of § 1 of the Sherman Act."   *Suntar Roofing*, 897 F.2d at 473.   Neither the method of allocation, nor its scope, can save a naked market allocation from *per se* condemnation. Allocation agreements are *per se* illegal even if they do "not foreclose all possible avenues of competition."   *Blackburn v. Sweeney*, 53 F.3d 825, 827-828 (7th Cir. 1995).   Nor is there any "significant difference between an allocation of customers and an allocation of territory." *United States v. Cadillac Overall Supply Co.*, 568 F.2d 1078, 1088 (5th Cir. 1978) (quoting *United States v. Consol. Laundries Corp.,* 291 F.2d 563, 574-575 (2d Cir. 1961).   An "agreement to suppress all competition as to one phase of [defendants] business, i.e., old customers, should be *per se*, illegal irrespective of [defendants] competition for new customers." *Id.*).

Agreements to allocate only new customers—that is, schemes to "rotate or otherwise allocate customers among the conspirators, so that each customer faces a monopoly seller"—are also illegal *per se*.   *Hammes v. AAMCO Transmissions, Inc.*, 33 F.3d 774, 782 (7th Cir. 1994) (Posner, J.); *see also United States v. Flom*, 558 F.2d 1179, 1182-83 (5th Cir. 1977).   In *Hammes*, a group of AAMCO dealers entered into an advertising pool and a call to any dealer in

the area in response to the advertisements would be "automatically forwarded, in accordance with a preexisting agreement, to one of the dealers in the pool."   *Hammes*, 33 F.3d at 777.   Any attempt to advertise outside of the pool or secure new business in other ways was not permitted. *Id.*   The Seventh Circuit found that scheme to be "an out-and-out scheme of customer allocation" that was a "per se violation of section 1" because any customer who should have had "a real and not merely theoretical choice between dealers" was denied that choice and the attendant price competition.   *Id.* at 782.   Similarly, in *Flom*, sellers of re-bar met regularly to "allocate[] the business on upcoming construction contracts among their respective companies." *Flom*, 558 F.2d at 1182.   Having determined a winner for each new upcoming contract, the companies would eliminate price competition between them by having the losers submit either a fake bid with the intention of losing or "no bid at all."   *Id.*   "The trial court was correct in holding that a contract allocation scheme in interstate commerce is a per se violation of the Sherman Act."   *Id.* at 1183.

The customer allocation agreement alleged in the Indictment is no different.   By agreeing not to compete at the normal point of competition for heirs, the Defendants ensured that each heir faced a single seller in place of the two companies who otherwise could have competed for their business.   As a result, the heir paid a noncompetitive price for those services.   And just like *Flom*, the conspirators did not need to eliminate all potential competition at all times for the conspiracy to have its full effect—it was enough for the conspirators to eliminate competition whenever it would have existed by allocating any "upcoming" contracts when the conspirators encountered each other pursuing the same heir.   558 F.2d at 1182.   The agreement alleged in the Indictment is in no way exceptional.   It allocates customers and forces them to pay a noncompetitive price because they face a single seller when they should reap the benefits of

5

competition between the two conspiring heir location companies.   It is subject to the *per se* rule.

### B.   The Unusual Nature of the Industry Is Irrelevant

The Court's holding that the challenged restraint was not *per se* unlawful because the heir location industry is "unique and unusual," Tr. 50; *see also* Proposed Order ¶ 3 (describing the industry as "relatively obscure"), disregards Supreme Court precedent.   *Arizona v. Maricopa Cnty. Med. Soc'y*, 457 U.S. 332 at 351 (1982) (rejecting "the argument that the *per se* rule must be rejustified for every industry that has not been subject to significant antitrust litigation"); *Socony-Vacuum Oil Co.*, 310 U.S. at 222 ("the Sherman Act . . . establishes one uniform rule applicable to all industries alike").   Whatever doubts a lower court may have about treating a particular category of restraint as *per se* unlawful, the Supreme Court made clear in *State Oil v. Khan* that it is the Supreme Court's "prerogative alone to overrule one of its precedents" and thereby subject a previously *per se* unlawful restraint to the rule of reason.   522 U.S. 3, 20 (1997).   This Court may not do so.

### C.   The Number of Impacted Parties Is Irrelevant

The Court further disregarded binding precedent in applying the rule of reason because the agreement "doesn't affect a very large part of our society," and is "just narrowly focused." Tr. 50; *see also* Proposed Order ¶ 3 (stating that the agreement "affected a small number of estates").   The substantive law governing the legality of a restraint does not turn on the breadth of its impact.   For example, bid rigging is illegal *per se* despite the fact that it often harms only a single purchaser or is local in nature.   *See, e.g.*, *United States v. Reicher*, 983 F.2d 168 (10th Cir. 1992) (holding *per se* unlawful a conspiracy to rig bids for a single contract); *United States v. Metro. Enters., Inc.*, 728 F.2d 444 (10th Cir. 1984) (affirming conviction for conspiracy to rig bids to repave portions of a highway in Oklahoma).   The same is true for customer allocation

schemes. *United States v. Coop. Theatres of Ohio, Inc.*, 845 F.2d 1367, 1371-72 (6th Cir. 1988) (applying *per se* rule to a conspiracy to allocate movie theatre booking contracts, notwithstanding the defense argument about the "limited nature" of the allocation agreement). In fact, an agreement may be *per se* unlawful even if it ultimately harms no one at all. *See United States v. Mobile Materials, Inc.*, 871 F.2d 902, 908 (10th Cir. 1989), abrogated on other grounds by *Bloate v. United States*, 559 U.S. 196 (2010).

### D. The Efficiency-Enhancing Effects of a *Per Se* Illegal Agreement Cannot Be Used to Avoid the *Per Se* Rule

Contrary to the Proposed Order (¶¶ 3-4), conduct that is *per se* unlawful may not be justified, nor may the application of the *per se* rule be avoided, by reference to any purported efficiency-enhancing effects. Supreme Court, Tenth Circuit, and other court of appeals decisions all prohibit courts from looking to the benefits of practices "identified as illegal per se" in order to assess their legality. *Law v. NCAA*, 134 F.3d 1010, 1016 (10th Cir. 1998); *SCFC ILC, Inc. v. Visa USA, Inc.*, 36 F.3d 958, 963 (10th Cir. 1994) (explaining that if a restraint falls into a category of restraints that is *per se* unlawful, then "no offsetting economic or efficiency justifications" can "salvag[e]" it); *St. Bernard Gen. Hosp., Inc. v. Hosp. Serv. Ass'n of New Orleans, Inc.*, 712 F.2d 978, 986-87 (5th Cir. 1983) ("*Maricopa* does, without question, negate the logic employed in the district court here that a price fixing scheme can be legal if its effects further the public interests.") (citing *Maricopa Cnty. Med. Soc'y*, 457 U.S. 332); *Socony-Vacuum Oil Co.*, 310 U.S. at 221 ("Congress has not left with us the determination of whether or not particular price-fixing schemes are wise or unwise, healthy or destructive.").

Firms often have to expend resources to compete. Thus, eliminating competition often saves the would-be competitors money, such as, marketing expenses, the costs to improve products, or the efforts spent preparing and delivering customized pitches or bids to potential

customers.   If the competition for customers is eliminated, then the would-be competitors are apt to experience a cost savings.   *Cf. Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 342-44 (1990) (explaining that some parties will benefit from *per se* illegal conduct).   But such cost savings cannot defeat application of the *per se* rule.   If they could, the Supreme Court's decisions creating a rule of *per se* unlawfulness would be effectively overruled.   *Cf. Gen. Leaseways, Inc. v. Nat'l Truck Leasing Ass'n*, 744 F.2d 588, 595 (7th Cir. 1984) ("The per se rule would collapse if every claim of economies from restricting competition, however implausible, could be used to move a horizontal agreement not to compete from the per se to the Rule of Reason category.").   While irrelevant to the analysis and, in any event, disputed, it is doubtful here that the customer allocation would save the conspirators the costs they incur to identify a potential estate and then identify and locate a potential heir by allocating the heir.   By the time the Defendants encountered their co-conspirator pursuing the same heir—and their customer allocation agreement was triggered—both heir location companies had already made the investment to find potential estates and heirs.

### III.    Applying the Ancillary Restraints Doctrine Pretrial Is Improper

Applying the ancillary restraints doctrine, as the Defendants' Proposed Order suggests, is improper at this stage of the case because it requires the Court to look at facts outside the Indictment and decide the ultimate issue in this case; that is, whether the Defendants knowingly participated in the conspiracy as charged by the Indictment.   *See* Proposed Order ¶ 4.   The ancillary restraints doctrine excepts agreements to allocate customers (and other otherwise *per se* unlawful agreements) from *per se* condemnation when they are ancillary to lawful collaboration among competitors—in other words, when they are not naked.   The ancillary restraints "doctrine governs the validity of restrictions imposed by a legitimate business collaboration, such as a

8

business association or joint venture, on nonventure activities." *Texaco Inc. v. Dagher*, 547 U.S. 1, 7 (2006).   A customer allocation agreement is ancillary only if it is "subordinate and collateral to a separate, legitimate transaction" and reasonably necessary to make that separate transaction "more effective [or efficient] in accomplishing its purpose." *Rothery Storage & Van Co. v. Atlas Van Lines, Inc.*, 792 F.2d 210, 224 (D.C. Cir. 1986) (Bork, J.); *see Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 338 (2d Cir. 2008) (Sotomayor, J., concurring); *United States v. Addyston Pipe & Steel Co.*, 85 F. 271, 289-291 (6th Cir. 1898), *aff'd* 175 U.S. 211 (1899).   For example, in *Polk Bros.,* 776 F.2d at 190, the court applied the rule of reason to a product allocation agreement that was ancillary to the joint financing and construction of a shared retail facility.

But the Indictment does not charge an agreement ancillary to a joint venture.   It charges a naked agreement to "suppress and eliminate competition by agreeing to allocate customers of Heir Location Services sold in the United States."   Indictment ¶¶ 9-11.   At trial, the jury will be asked to decide whether the government carried its burden of proving that the charged agreement actually existed—as opposed to some other, broader agreement.   *See United States v. Green*, 592 F.3d 1057, 1068-69 (9th Cir. 2010) (affirming conviction under *per se* rule because evidence "was sufficient to support jury's finding that [defendant] engaged in bid rigging," rather than merely organizing "legitimate teaming agreements" as defendant claimed).   To answer that question, the jury will have to determine to what the Defendants agreed:   Did the Defendants agree to allocate customers (as the government plans to prove) or did the Defendants agree to do something else to which customer allocation was a necessary but subordinate component?   This Court may not supply the factual answer to that question in response to a pretrial motion:

Federal Rule of Criminal Procedure 12 and binding Tenth Circuit precedent forbid it.[3]   *United States v. Pope*, 613 F.3d 1255, 1260-61 (10th Cir. 2010) (Gorsuch, J.) (describing the circumstances under which a court may resolve a pretrial motion that goes to the ultimate merits); *United States v. Todd*, 446 F.3d 1062, 1068 (10th Cir. 2006) ("On a motion to dismiss an indictment, the question is not whether the government has presented sufficient evidence to support the charge, but solely whether the allegations in the indictment, if true, are sufficient to establish a violation of the charged offense.").

At trial, the government fully expects to offer testimony and other evidence proving beyond a reasonable doubt that the Defendants conspired to eliminate competition by allocating customers and acted to carry out that allocation.   If the evidence shows instead that the Defendants agreed to jointly do something other than eliminate competition—for example, developing a joint genealogical database—and that the agreement to allocate customers was subordinate and collateral to that legitimate joint activity, then the jury should acquit because that is not the conspiracy charged.   *See Rothery*, 792 F.2d at 224; *see also SCFC*, 36 F.3d at 964; *Polk Bros.*, 776 F.2d at 189 (Easterbrook, J.) (explaining that a *per se* unlawful agreement is ancillary if, "viewed at the time it was adopted, [it] may promote the success of this more extensive cooperation"); *MLB Properties*, 542 F.3d at 337 (Sotomayor, J., concurring) ("[C]ompetitors engaged in joint ventures may be permitted to engage in a variety of activities that would normally be illegal under a *per se* rule when such activities are necessary to achieve the significant efficiency-enhancing purposes of the venture.").

---

[3] To the extent the Proposed Order finds that the allocation agreement is an ancillary restraint (or had only limited effects, *see supra* Section II), it necessarily and improperly considered facts outside the Indictment and resolved factual disputes.

Collaboration by the Defendants merely to implement their customer allocation scheme is no defense.  The argument that a customer allocation "constitutes a joint venture and therefore we can defend against a charge of" customer allocation "on the ground that we were participating in a joint venture" is "tautological."  *United States v. Nusbaum*, 2009 WL 4738075, at *1 (D. Md. Dec. 4, 2009).  It "makes no sense and flies in the face of the well-established principle that [customer allocation agreements] are *per se* illegal."  *Id.*  As then-Circuit Judge Sotomayor explained, "the antitrust laws prohibit two companies A and B, producers of X, from agreeing to set the price of X" and "A and B cannot simply get around this rule by agreeing to set the price of X through a . . . joint venture if the purpose and effect of that agreement is to raise, depress, fix, peg, or stabilize the price of X."  *MLB Properties.*, 542 F.3d at 336 (Sotomayor, J., concurring).

Moreover, the Proposed Order wrongly states that the Court can consider the written agreement attached to the Defendants' motion "because it forms the basis of the government's allegations" and "the government never disputed as much."  Proposed Order 2-3 n.2.  The written agreement cannot substitute for or supplement the Indictment returned by the grand jury and may not be considered by the Court when resolving the Defendants' motion.  Although the written agreement may be relevant evidence at trial, it is not the entire basis of the allegations in the Indictment nor does it reflect every aspect of the conspiracy.  In any event, courts may only consider facts outside the indictment in "the limited circumstances where the operative facts are undisputed and the government fails to object to the district court's consideration of those undisputed facts in making the determination regarding a submissible case."  *United States v. Hall*, 20 F.3d 1084, 1088 (10th Cir. 1994).  That exception does not apply here because the government did object to the factual assertions in the Defendants' motion including the claim

that the guidelines are coextensive with the agreement charged in the Indictment.   Opp. at 7, 18; Tr. at 25-26 ("The government objects to any consideration of factual material outside of the indictment at this phase . . . including the guidelines agreement.").

The government respectfully requests that the Court reconsider its application of the ancillary restraints doctrine at this stage of the case, to the extent that it did so, and limit its analysis to the allegations in the Indictment.

**IV.     Request for a Ruling on the Motion to Dismiss**

On June 21, 2017, this Court also heard oral argument on the Defendants' Motion to Dismiss the Indictment on statute of limitations grounds.   The Court reserved its ruling on this part of the Defendants' Motion pending the government's evaluation of the case.   (Dkt. 87). The government now requests that the Court rule on this issue.

**V.     Conclusion**

For the reasons above, the government respectfully requests that the Court reconsider its oral holding of June 21, 2017 (Dkt. 87) that the case be subject to the rule of reason and enter an order that the *per se* rule applies to the charged conspiracy, reserving judgment on whether there is sufficient evidence at trial of a legitimate collaboration to justify, as a theory of defense, a jury instruction on ancillary restraints or joint ventures.

The government also requests that the Court issue its ruling on the Defendants' Motion to Dismiss based on the statute of limitations.

DATED this 14th day of July 2017.


Respectfully submitted,


/s/ Kalina M. Tulley
KALINA M. TULLEY, IL Bar No. 6210304
Assistant Chief

ROBERT M. JACOBS, IL Bar No. 6289819
RUBEN MARTINEZ, JR., TX Bar No. 24052278
MOLLY A. KELLEY, IL Bar No. 6303678
Trial Attorneys
Antitrust Division
U.S. Department of Justice
Chicago Office
209 S. LaSalle Street
Suite 600
Chicago, Illinois 60604
(312) 984-7200

## <u>CERTIFICATE OF SERVICE</u>

I, Ruben Martinez, Jr., hereby certify that on July 14, 2017, I caused a copy of the foregoing to be served in accordance with Fed. R. Crim. P. 49, LR 5.5, and the General Order on Electronic Case Filing (ECF) pursuant to the district court's system as to ECF filers.

Respectfully submitted,

/s/ Ruben Martinez, Jr.

Antitrust Division
U.S. Department of Justice
Chicago Office
209 S. LaSalle Street
Suite 600
Chicago, Illinois 60604
(312) 984-7200